## Hardy v. Peoples State Bank & Trust Co. et al.

April 21, 1950.

Rehearing denied June 6, 1950

William J. Baxter, Judge

822

R. R. Craft, for appellant.

Redwine & Redwine, William O. Hays and S. T. Davis, for appellees.

JUDGE LATIMER—Affirming on direct appeal, reversing on cross-appeal.

The question on direct appeal addresses itself to the validity of appellant's mortgage. The question raised by appellees on cross-appeal concerns the chancellor's finding that appellant was a general creditor. The questions arise in an action by appellant, A. B. Hardy, one of the administrators, who filed petition to settle the estate of J. Newt Renaker.

In September 1923, J. Newt Renaker executed and delivered to his brother-in-law, A. B. Hardy, a deed to a ½ undivided interest in a house and lot in Winchester known as the Winn Avenue property. This deed, however, was never recorded. In 1929 Renaker sold this property to a Mr. Goodpastor and executed a deed thereto, apparently without the knowledge or consent of Hardy.

On August 6, 1932, Renaker and his wife executed a mortgage on their home on Euclid Avenue in Winchester to Hardy. The consideration, as recited in the mortgage was: "That whereas the parties of the first

part are indebted to the party of the second part in the sum of seventeen hundred and fifty dollars ($1750.00), evidenced by promissory note of even date herewith, due and payable one year from date, and to further indemnify him against any loss he might sustain by reason of other advancements or endorsements made to first parties, * * *." On September 19, 1933, which was a little more than a year after the acknowledgment, the mortgage was lodged for record and duly recorded. About a month later Mr. Renaker died. The record shows that on January 6, 1933, which was approximately 9 months before his death, Renaker wrote Hardy a letter informing him of the sale of the Winn Avenue property and stating that, in order "to make up to him," he was executing a mortgage on the Euclid Avenue property. Hardy knew nothing about either the letter or the mortgage until delivered to him by Renaker's widow after Renaker's death.

It appears that Renaker, after moving from Harrison County to Winchester, was actively engaged in real estate business. During the course of his business he became considerably involved and so much so that at the time of his death he appeared to be insolvent. The record discloses that he was indebted to numerous people, some of whom he owed substantial amounts. After plaintiff, as administrator, had filed petition in circuit court for the settlement of Renaker's estate, the matter was referred to master commissioner for the filing of claims. Among the claims filed was that of Hardy's for $1,750, as evidenced by the mortgage above. The master commissioner allowed this claim. It appears that in December 1935, after the filing of the petition, one of the appellees herein filed answer attacking the validity of the alleged mortgage. However, the action remained dormant and nothing was done apparently until after the death of the widow, Mrs. Renaker, which occurred in January 1948. The matter was then pressed.

After hearing all the facts leading up to and surrounding the execution of the mortgage, the chancellor decided it to be invalid, but held that A. B. Hardy was entitled to share in the settlement and distribution of the Renaker estate as a general creditor.

Hardy appeals from the finding relative to the validity of the mortgage. Appellees cross-appeal from that

part of the judgment decreeing appellant a general creditor.

In his brief, appellant complains that the chancellor did not state reasons for holding the mortgage invalid, thus leaving him in somewhat of a quandry in his attempt to be definite in his argument. Consequently, it appears that appellant has made a sort of "splatter shot" and spread his fire over a wide range. After discussing approximately every element entering into and operating to make a mortgage invalid, he insists there is nothing that would vitiate the instrument herein. He shows that the mortgage was based on valid consideration, that it was neither fraudulent nor preferential; and that it meets the tests of delivery and acceptance. He finally insists that appellees are guilty of laches.

On the other hand, appellees call attention to certain alleged incongruities, inconsistencies and badges of fraud, which they insist clearly show the mortgage to be a fraudulent transfer designed to defeat creditors.

That a person may make disposition of his property is inherent in the power which a man possesses over his property. However, such disposition must not interfere with the existing rights of others. In order to determine whether or not this conveyance was fraudulent, we must consider such elements as intention of the parties; the solvency or insolvency of the transfer; the presence or lack of consideration; the relationship of the parties, etc. We shall keep in mind these elements in determining the character of this conveyance.

We begin with the fact that in 1923 Renaker conveyed to appellant a ½ undivided interest in his Winn Avenue property for a claimed consideration of $1,750. Appellant was not certain he had ever seen this property. He never recorded his deed to it. Six years afterwards the property was sold by Renaker, who with his wife executed a deed. This he could do because Hardy's deed had never been recorded. About three years thereafter, Renaker and his wife executed to Hardy a mortgage on their home place known as the Euclid Avenue property. This mortgage was not recorded until a year afterwards. About 9 months prior to his death, Renaker wrote a letter to Hardy informing him of the sale of the Winn Avenue property and of the execution of the mortgage, which he said was "to make up to him." Hardy

claims that he knew nothing about the sale of the Winn Avenue property, the mortgage, or the letter, until after Renaker's death, which was about 10 years after the time he had received his deed to a ½ undivided interest. He says he received no rent money, no interest, or anything at all from his investment of $1,750.

Considering the elements mentioned above, let us see what we have before us. First, we have transaction between relatives. Second, we have a striking departure from usual methods of business. It does not appear reasonable that a man will invest $1,750 for a ½ interest in a place and then receive nothing at all therefrom, and know nothing at all about the property for a period of 10 years, when during all that time, as appellant admits according to his brief, "after the Renakers moved to Clark County they and the Hardys made frequent trips back and forth between the two counties visiting each other." Ordinarily, legitimate transactions are not thus treated and there is such a departure from the usual methods of business as to raise a question. Then, when we couple this with the other circumstances, such as relationship and insolvency, the failure to record the mortgage for a year after it was executed, and the written letter to be delivered upon Renaker's death, all combine to convince us that the conveyance was fraudulent, and that the court properly adjudged the mortgage to be invalid and of no effect.

Appellant charges laches on the part of appellees, in that they allowed the question to remain at ease until after the death of Mrs. Renaker, which covered a period from 1935 until her death in 1948. We find explanation of this attitude upon the part of the bank in the following questions and answers addressed to and given by Joseph T. Brown, Vice President and Cashier of the bank:

"RDQ. 1 Now, Mr. Brown, tell the court why it was that the bank didn't go on and force the sale of this property on Euclid Avenue at the time when the remainder of the assets of Mr. Renaker's estate known to the creditors was sold?. A. At that time I was Cashier of the bank. Mrs. Renaker was in a very critical condition as to her health. The doctor stated that after making an exploratory operation there was nothing more he could do for her, and he thought her days were

limited. Mr. M. C. Redwine, attorney for the bank, and myself discussed the matter and thought it best to refrain from foreclosing on this home and give the widow an opportunity to live out her natural days in peace and quiet, and for that reason we withheld the further prosecution of this case.

"RDQ. 2 So actually the real delay in forcing the sale of this property was brought about out of kindness in the heart of you as Cashier of the bank and Mr. Redwine as its attorney in giving this woman consideration for a home in which to live? This widow? A. The Board of Directors, the attorney, and myself all agreed on that policy."

This not only appears to us to be a reasonable explanation but a humane attitude.

We now consider the question raised by appellee. The judgment is inconsistent unless it be based upon a preferential conveyance under KRS 378.060. Appellees seem to take the position that failure to record the mortgage for a year after it was executed automatically makes it a void conveyance. The statute merely says that any indebtedness or liability created simultaneously with the mortgage shall not vitiate or affect such mortgage made in good faith if lodged and recorded within 30 days after its execution. We do not have here a debt created simultaneously with the mortgage. The consideration, if there is a consideration, is the $1,750 claimed to have been paid for the ½ undivided interest in the Winn Avenue property which was sold in 1929 prior to the execution of the mortgage. Such conveyance, if preferential, must be attacked within 6 months after the mortgage is legally lodged for record. KRS 378.070(1). This was not done. Consequently, the court could not set it aside as a preferential conveyance.

A fraudulent conveyance with intent to defeat creditors is void as against existing creditors, purchasers and other persons. KRS 378.010.

Having found the conveyance to be fraudulent, it follows, then, that the court should not have found Hardy to be a common creditor.

Wherefore, the judgment is affirmed on the direct appeal and reversed on the cross-appeal with directions to enter judgment in conformity herewith.